IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LORNA CLAYCOMB,                  :
                                 :
        Plaintiff,               :
                                 :
   v.                            :   Civil Action No. 06-120-JJF
                                 :
PLAYTEX PRODUCTS, INC.,          :
                                 :
        Defendant.               :

Lorna Claycomb, Pro Se Plaintiff.

Donald E. Reid, Esquire and Jason A. Cincilla, Esquire of
MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.
Attorneys for Defendant.

**MEMORANDUM OPINION**

June 19, 2007
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendant Playtex Products, Inc.'s Motion For Summary Judgment (D.I. 26). For the reasons discussed, the Motion will be granted.

## I. Background

Plaintiff, Lorna Claycomb, was employed at Defendant's plant located in Dover, Delaware from October 20, 2000 through January 3, 2005. At the Dover Plant, Defendant manufactures, packages and distributes Gentle Glide tampons, Sport tampons and Beyond tampons, as well as infant care products including Drop-ins bottle liners, bottles, cups and nipples.

Employees at the Dover plant are assigned jobs through a "bidding" system, whereby available jobs are posted, and employees bid for the jobs in which they are interested. Job assignments are based on seniority. When jobs are eliminated based on the operational needs of the company, employees may either bid on any open jobs, accept a temporary assignment (a short term version of the various job assignments that occasionally become available based on the company's production needs), or accept a voluntary layoff.

During her tenure working for Defendant, Plaintiff performed the following jobs and temporary assignments:

| Date | Job | Division |
|---|---|---|
| 10/20/00 - 2/19/01 | Machine Operator | Silk Glide |
| 2/20/01 - 3/11/01 | Machine Operator | Gentle Glide |

| | | |
|---|---|---|
| 3/12/01 - 4/29/01 | Inspector/Packer (Temp.) | Gentle Glide |
| 4/30/01 - 7/29/01 | Machine Operator (Temp.) | Gentle Glide |
| 7/30/01 - 9/30/01 | Machine Operator | Silk Glide |
| 10/1/01 - 4/18/02 | Machine Operator | Silk Glide |
| 4/19/02 - 2/2/03 | Quality Control Inspector | Gentle Glide |
| 2/3/03 - 5/08/03 | Inspector/Packer | Gentle Glide |
| 5/9/03 - 4/18/04 | Quality Control Inspector | Silk Glide |
| 4/19/04 - 5/13/04 | Quality Control Inspector (Temp.) | Gentle Glide |
| 5/14/04 - 8/30/04 | Quality Control Inspector (Temp.) | Gentle Glide |
| 8/31/04 - 9/30/04 | Packager (Temp.) | Drop-Ins |
| 10/1/04 - 12/26/04 | Packager (Temp.) | Drop-Ins |
| 12/27/04 - 1/03/05 | Line Inspector (Temp.) | Cherubs (pacifiers) |

Plaintiff contends that on March 18, 2003, she visited a walk-in clinic for her asthma because she felt she had been "inhaling too much cottons [sic] in my work." (D.I. 6). Plaintiff alleges that she was sent back to work with a Doctor's note, which was disregarded by her supervisor. As a result, Plaintiff alleges that she suffered further asthmatic symptoms that necessitated hospital treatment on March 26, 2003. Because of her alleged asthma, Plaintiff went on medical leave until May 8, 2003. On May 9, 2003, Plaintiff returned to work and began a new assignment as a Quality Control Inspector in the Silk Glide department. With regard to the different assignments following her medical leave, Plaintiff contends that her salary decreased

and she never got back to her "normal job." (D.I. 6).

On December 23, 2004, Plaintiff was informed that her temporary assignment as a Packager in the Drop-Ins department was ending, and she would be transferred to a temporary assignment as a Line Inspector in the Cherubs division, working with baby pacifiers. In that position, Plaintiff was required to inspect pacifiers on the assembly line and assemble pacifier boxes. Plaintiff expressed displeasure with the job assignment and asked for a Quality Control Inspector job. Defendant informed Plaintiff that she could not select a job based on personal preference, and Plaintiff ultimately agreed to try the Line Inspector assignment.

Plaintiff began her Line Inspector assignment on December 27, 2004. One week later, on January 3, 2005, Plaintiff informed her supervisor that when she performed the assigned task of pulling the nipple of a pacifier out from the base of the pacifier, she felt the muscles in her chest tighten. Plaintiff expressed concern that she might suffer from an asthma attack. In response, Defendant had Plaintiff examined by its occupational health physician, Dr. Aaron Green. In his examination of Plaintiff, Dr. Green found no physical or medical limitations that would preclude her from performing her assigned tasks. Defendant and Dr. Green also reviewed the results of air quality tests performed in the Cherubs work area and other work areas of the Dover plant and found no irritants that might affect someone

with an asthmatic condition.

Despite Dr. Green's assessments, Defendant asked Plaintiff to identify her alleged limitations so that they could begin looking for alternative temporary assignments for Plaintiff to perform. As a result of this process, Defendant offered Plaintiff a Quality Control Inspector position in the Gentle Glide division. Plaintiff declined, alleging that the cotton fibers from the tampons would agitate her asthma condition. Plaintiff claimed that the only job she could perform was Quality Control Inspector in the Drop-ins division.

On January 5, 2005, Defendant informed Plaintiff that she could either accept one of the two positions offered to her, for which she had been found medically fit to perform, or elect a voluntary layoff. Contending that the two available assignments, Line Inspector for the Cherubs division or Quality Control Inspector for the Gentle Glide division, might cause her to suffer an asthma attack, Plaintiff elected the layoff.

**II. Parties' Contentions**

By its Motion, Defendant contends that it should be granted summary judgment on Plaintiff's claim because Plaintiff cannot establish a prima facie case of discrimination under the Americans With Disabilities Act ("ADA"). Specifically, Defendant contends that Plaintiff cannot establish that she suffered from a disability within the meaning of the ADA.

Defendant additionally contends that even if Plaintiff can establish a <u>prima facie</u> case of discrimination, Defendant had a legitimate, non-discriminatory reasons for its actions. Alternatively, Defendant claims that, to the extent Plaintiff's claims are based on her 2003 asthma attack, her claims are time-barred.

Plaintiff's only response to Defendant's Motion is a letter dated February 7, 2007, wherein Plaintiff acknowledges receipt of Defendant's Motion and that she "read and understand[s]" it. (D.I. 31). Plaintiff reiterates that she suffers from an asthmatic condition. In her prior filings, Plaintiff alleged that her asthma complications were caused by cotton fibers in the air at Defendant's plant, and that when she returned to work after medical leave "my job change[d], my salary went down, and I never got back to my normal job" (D.I. 6).

### III. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the

light most favorable to the non-moving party.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).

## IV. DISCUSSION

### A. Whether Plaintiff Has Established A Prima Facie Case Of Discrimination Under The ADA

To establish a claim under the ADA, a plaintiff must first establish that he or she "(1) has a 'disability' (2) is a 'qualified individual' and (3) has suffered an adverse employment decision because of that disability." Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998). If a plaintiff meets this initial burden, the court must then determine whether the plaintiff has put forth direct or circumstantial evidence of discrimination. If the plaintiff has put forth direct evidence of discrimination, the court uses a "mixed motive" theory, meaning that "a plaintiff need only show that the unlawful motive was a 'substantial motivating factor' in the adverse employment action." Shellenberger v. Summit Bancorp, 318 F.3d 183, 187 (3d Cir. 2003) (citations omitted). If, however, the plaintiff has put forth circumstantial evidence of discrimination, the court uses a pretext theory, which incorporates the burden-shifting

analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Lawrence v. Nat'l Westminster Bank, 98 F.3d 61, 68 (3d Cir. 1996) (stating that, in ADA cases, courts are to apply the Title VII burden-shifting rules).

Under the burden-shifting analysis, once the plaintiff has established a prima facie case of discrimination, the burden of production switches to the defendant who must "articulate some legitimate, nondiscriminatory reason" for its actions. Green, 411 U.S. at 802. If the defendant produces sufficient reasons for its actions, the burden switches back to the plaintiff to demonstrate that the defendant's proffered reasons are merely a pretext for discrimination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). To defeat a motion for summary judgment using this framework, plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Id. at 764.

Reviewing the evidence in the light most favorable to Plaintiff as the nonmovant, the Court concludes that Plaintiff has failed, as a threshold matter, to establish a prima facie case of discrimination under the ADA. To establish a disability within the meaning of the ADA, the plaintiff must demonstrate

that he or she has "a physical impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2). Major life activities include such tasks as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

Based on Plaintiff's allegations, the Court concludes that her disability relates to the ability to breathe and work. Defendant has offered the medical assessment of Dr. Green that Plaintiff did not suffer from any substantial limitations. However, Plaintiff has not offered any medical evidence to rebut Dr. Green's assessment or support her allegations that she is substantially limited in these major life activities. Accordingly, the Court concludes that Plaintiff has failed to establish that she suffered from a disability within the meaning of the ADA.

To the extent that Plaintiff contends that Defendant failed to accommodate her, the Court likewise concludes that Plaintiff is not entitled to relief. Defendant engaged in the interactive process with Plaintiff searching for a position that would accommodate her. Defendant offered Plaintiff Line Inspector and Quality Control Inspector positions, both of which she was found physically fit to perform, but Plaintiff refused the positions contending that she could only serve as a Quality Control

Inspector in the Drop-ins division. Plaintiff has not established that she was entitled to the accommodation she sought, and therefore, the Court cannot conclude that Defendant acted illegally in providing her with a choice between two positions or a voluntary lay-off. Plaintiff has not demonstrated that Defendant's actions were in any way a pretext for disability discrimination. Accordingly, the Court concludes that Plaintiff's claim of discrimination under the ADA fails as a matter of law.

## V. CONCLUSION

For the reasons discussed, Defendant's Motion For Summary Judgment (D.I. 26) will be granted.

An appropriate Order will be entered.